# Keim's Appeal.

The refusal of the Court of Common Pleas to take off the confirmation from a report of auditors, on the account of an assignee under a voluntary assignment, is not a decree from which an appeal will lie to this court.

Nor will it enable this court to review the original decree confirming such report where the appeal has not been entered within a year from the date of such confirmation, as provided in the Act of Assembly.

Where the petition is in form or substance a bill of review on facts subse-

[Keim's Appeal.]

quently discovered, or which the appellant had no opportunity of presenting at first, the case might be different.  Per BLACK, J.

A creditor who has a lien upon a particular portion of the assigned estate, and out of the sale of a part of which he realizes a portion of his claim, is entitled to his *pro rata* dividend on the whole claim out of the general assets in the hands of the assignee to an amount sufficient to pay the balance of his demand in full, although a portion of the estate upon which he holds the lien remains unsold.

An assignee in such case who has paid claims in full which, upon a distribution, are only entitled to a *pro rata* payment, cannot claim to be subrogated to the rights of the lien creditor, for the purpose of indemnifying himself for such payments beyond the assets in his hands.

APPEAL from the decree of the Court of Common Pleas of *Berks county*.

Daniel De B. Keim on the 8th May, 1834, made a voluntary assignment of all his property to Benneville Keim for the benefit of creditors.  The assignee filed his account in the Common Pleas of Berks county, on which auditors were appointed, who made a report on the 1st January, 1845.  Exceptions were filed, and were pending until the 27th June, 1854, when they were dismissed by the court, and the report confirmed.  On the 12th August, 1854, distribution was decreed according to the report.

At the time of the assignment Daniel De B. Keim had purchased under articles of agreement, certain lands in Schuylkill county from Christian Ley, upon which a large amount of the purchase-money remained unpaid.  Keim, the assignor, and Ley both died, and the legal title had never been conveyed.  In 1843 the legislature passed an Act to authorize the administrators of Ley to convey the premises to Keim's administrators, in trust for the parties entitled, and authorizing Keim's administrators to execute a mortgage for the unpaid purchase-money.  These powers were carried out by the respective administrators.  And on the 25th May, 1844, Keim's administrators executed a mortgage for $4499.36, with interest from that date.  *Scire facias* was issued on this mortgage, and judgment obtained for $5185.50, with interest from 10th December, 1846, the date of the judgment.  Several writs of *lev. fa.* were issued upon this judgment, between its date and 1852, and the sum of $4939.04 realized on them by the sale of various portions of the mortgaged premises, a part of which still remained unsold.

The auditor's report made in 1845 showed the amount in the hands of the assignee to be $22,566.39, and the debts, including Ley's, amounted to $31,917.29 ; $18,306.87 of which the assignee had paid in full before the auditor's report.  The auditor's report distributed the proceeds *pro rata* among all the creditors, including Ley.  To this claim was awarded $3265.85, and on the same day the decree of distribution was made, an execution was awarded in favour of Ley's administrator for that amount against the assignee.

On application of the defendant this writ was stayed by the President Judge. On the 21st June, 1855, Benneville Keim, the assignee, presented his petition to the court, setting forth all the facts above recited, and praying the court " to rescind and annul the confirmation of said report of auditors, said order of distribution, said award of execution, and that said execution and levy may be set aside, and that the court will grant him such relief in the premises as in law and equity he is entitled to." On the 19th November, 1855, the court decreed as follows: " The prayer of the within petition is refused, and the stay of the execution heretofore issued is taken off, and the rule to set aside the *fi. fa.* is discharged."

On the 11th January, 1856, this appeal was taken.

Error assigned: The court erred in refusing the prayer of the petitioner, and in taking off the stay of execution, and in discharging the rule to set aside the *fi. fa.*

*Banks,* for appellant.

There was no appearance or paper-book for appellee.

The opinion of the court was delivered by

BLACK, J.—The appellant was appointed assignee of D. De B. Keim for the benefit of creditors, in 1834. His account was filed and auditors appointed to adjust it in 1840. Auditors made made report in 1845. Report confirmed in 1854. In 1855 the appellant petitioned the court to take off the confirmation, which was refused, and he appealed in 1856.

The statute (see *Purd. Dig.* 805) requires an appeal in such a case as this to be taken in one year from the date of the decree. The decree confirming the auditor's report was much more than a year old at the time of this appeal, and could not therefore be reached by it, even if the appellant had intended or desired to do so. But the appeal is directly and distinctly declared on the record to be from the refusal of the court to grant the prayer of a petition presented subsequently to the confirmation; and that is the whole substance of the only error assigned.

Is the dismissal of a petition praying the Court of Common Pleas to take off the confirmation from a report of auditors, a definitive decree from which an appeal to this court will lie? If the petition were in form or substance a bill of review—if the right to a rehearing had been demanded on the ground of facts which were afterwards discovered, or which the appellant had no opportunity of presenting at first—the case might be different. But we have no reason to doubt that the whole matter set forth in this petition was considered and passed upon by the auditors. The appellant himself has taken care to tell us that it was brought

to the attention of the court by one of his exceptions, and decided against him. That a party can have a full hearing in a dispute like this—suffer a final decree against him—let the time for appealing pass by—then present a petition requesting the court to change its mind—and if it refuses, appeal with the same effect as if the appeal had been taken in due time—this we are unwilling to give our assent to.

But notwithstanding this, we have heard an argument and considered the merits of the case as if it were regularly before us. We think the confirmation of the auditor's report was right. The balance due from the appellant was ascertained to be $22,566.39. He does not assert that he was charged with too much, or that he was entitled to any credits which he did not get. The debts amounted in all to $31,917.29, of which the assets were sufficient to pay $70\frac{7}{10}$ per cent., and they were distributed among them *pro rata*. Among other creditors was the administrator of Ley, whose dividend amounted to $3265.85. That debt was a lien on land in Schuylkill county, out of which the creditor had realized $3681.51, a sum greater than the dividend awarded to him, but not equal to the whole debt. The appellant thinks that the amount thus obtained out of the land ought to be credited on the dividend as if he had himself paid it out of the fund in his hands. This would be manifestly wrong in any ordinary case, for it would enable the assignee to put the money into his own pocket. The circumstance which is supposed to make the present case differ from an ordinary one is that the assignee overpaid some of the creditors, and if he gets a credit for Ley's dividend, without paying it, he will not be more than even. But this circumstance does not, in our opinion, strengthen his claim in law, though it does undoubtedly redeem it from all imputation of dishonesty. He cannot make reprisals upon one creditor to indemnify himself for paying too much to another.

The lands in Schuylkill were sold by Christian Ley to D. De B. Keim, the assignor, but the purchase-money was unpaid, and the legal title remained in Ley. This was the condition of things when Keim made his assignment to the appellant, and so it remained until both Keim and Ley were dead. Then (in 1843) an Act of Assembly was passed, with the object, we presume, of simplifying the title, so that purchasers need have no fears. In pursuance of that act, and under its authority, the administrator of Ley made a deed to the administrator of Keim, and the administrator of Keim secured the purchase-money by giving a mortgage on the same lands to the administrator of Ley. The representative of Ley got no advantage by this, nor did the assignee of Keim lose anything by it. The purchase-money was as well secured upon the land before the Act of Assembly as it was afterwards. It was also the personal duty of Keim to pay for the

[Keim's Appeal.]

land he had bought. That obligation descended upon his personal representatives, and there is nothing in the Act of Assembly, nor in the giving of the mortgage, which discharges it. Ley's administrator has a perfect legal and equitable right to demand and receive the whole debt from the mortgaged premises, and the personal fund in the hands of the appellant. When he claims all that is due to him, he does not commit anything at all resembling "piracy."

Of course Ley's administrator has no right to receive from the assignee more than will pay the balance of the debt, and we do not understand that more is claimed. The amount made from the land will be credited on the whole debt, and execution go for the balance only. The appellant will therefore not be obliged to pay the whole sum that was awarded as the dividend of Ley's debt. The money which he will thus retain should be applied *pro rata* to all the debts, and those which he has paid in full will get their share with the others.

The appellant cannot claim to be subrogated to the rights of Ley's estate against the land. His payment of debts which he had no assets to pay, did not give him a better position than the original creditors would have had if they had got no more than their share. They could not have claimed a subrogation properly speaking. They might insist—and the appellant standing in their shoes may also insist—that Ley shall not be twice paid; that if he is satisfied out of one fund, he shall leave the other to the rest of the creditors. By paying off the balance of this debt, the appellant clears the lands in Schuylkill of the mortgage, and leaves what can be made out of them to be divided among the other creditors.

Appeal quashed.