# Brennan's Estate.

1. Courts are the best exponents of their own rules.
2. The Supreme Court will reverse when the court below has plainly disregarded or violated its own rules.
3. A rule of court required auditors to certify with their report that they had given notice of the time of filing. The court confirmed a report without such certificate. The Supreme Court reversed the decree.
4. An administrator allowed a widow to receive the proceeds of a note which she claimed as her own, the court disallowed commissions because this was a breach of duty. *Held*, that if the note belonged to the decedent the administrator should have been surcharged with it, and the amount taken as a payment on the widow's distributive share.

January 20th 1870. Before THOMPSON, C. J., READ, SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Schuylkill county*. In the matter of James Brennan's Estate: Of January Term 1870.

The decedent died intestate October 27th 1865, leaving a widow, Catharine Brennan (since intermarried with John Divinney), and four collateral next of kin, but no children. Administration of his estate was granted to William Verner, who, on the 9th of April 1867, filed an account showing in his hands a balance of $4737.63. The heirs filed exceptions to the account; that the administrator should have charged himself with $500, the value of a leasehold of the decedent; that the commissions, $484.44, were unreasonable and that payments to the widow should not have been introduced into the account, being matters of distribution. On the 1st of July 1867, Thomas H. Walker, Esq., was appointed auditor to restate the account and make distribution. The auditor appointed the 20th of July 1867 for a hearing; the court upon application of exceptors continued the appointment

[Brennan's Estate.]

from term to term until March Term 1868, and on application of the administrator and widow continued it until July Term, and again until September Term 1868.

There was evidence that the purchase of the leasehold had been contracted for by the decedent, but that it had been conveyed to his wife; also, that George Cantner, who was one of the sureties of the administrator, had borrowed $500 from the decedent, that the money had been produced by the wife, and Cantner gave Brennan a note for it, payable in twelve months with interest, that he had paid the money to Mrs. Brennan after the decedent's death; Mrs. Brennan had possession of the note; the administrator knew all about the note; there was other evidence for the purpose of showing that the money was Mrs. Brennan's. The heirs gave evidence that after the decedent's death, Mrs. Brennan told a witness that there was in a pocket, which witness saw, money amounting to $10,500. Another witness testified that the decedent, a short time before his death, told him that he had accumulated money and bonds to the amount of $10,000, and that decedent showed him money and bonds; witness also saw money, notes, and bonds in decedent's possession to the amount of $11,000.

The auditor sat on the 2d of September 1868 to hear the parties before making distribution, the several parties in interest being represented. The hearing was at the request of the widow adjourned until the 26th of the same month.

The auditor sat according to adjournment on the 26th of September, when the widow applied for a continuance for the purpose of taking testimony; the application was resisted by the heirs. The record does not show that anything further was then done.

The following is a rule of the Orphans' Court of Schuylkill county:—

"68. Whenever any matter in the Orphans' Court shall be referred to an auditor, his report shall be made on the first day of the next term, unless the court specially extend the time; and such report when made shall be marked by the clerk, filed and confirmed nisi. And unless exceptions be filed within ten days, the clerk shall enter the report confirmed absolutely: Provided that in cases where the court shall especially extend the time for making the report, the auditor shall give notice to the parties who appeared before him, or their attorneys, of the time of making the report, a certificate of which shall be filed with the report."

The auditor reported, charging the administrator with $550, the value of the leasehold; he further reported, that inasmuch as there had been no exception that the administrator had not charged himself with the Cantner note, he could charge him with its amount, but because the administrator had neglected to charge himself with it, he deemed it such a breach of trust under the circumstances as to deprive him of his commissions, he accordingly

15 P. F. Smith—2

[Brennan's Estate.]

struck them from his credits. He found that Mrs. Brennan had received the $10,500, said to have been in the pocket; he found also that part of the $10,500 had been included in the inventory, leaving in her hands $6105. Upon a restatement of the administration account, he found that after deducting the expenses of the audit there were in the administrator's hands $8125.97, which, with the amount ($6105) in the widow's hands made the whole sum for distribution $14,230.97; of this the widow would be entitled to $7115.48, and having, according to the finding, already received $6105, he reported that there was still payable to her $1010.48; he distributed the remaining one-half amongst the other next of kin of the decedent.

There was no certificate of the auditor accompanying the report or filed with it, that he had given notice to the parties of the time when he would make the report.

On the 12th of October 1868, on motion of the attorney for the heirs the court confirmed the report of the auditor nisi.

The administrator and widow filed exceptions, October 19th. One of the exceptions of the widow was, that the auditor had not given notice of the time of filing his report.

The court recommitted the report to the auditor, directing that the surcharge of $550, the value of the leasehold, should be stricken out; and refused to grant the application made by the widow for a rehearing, which she asked on the ground that she had not had notice of the time of filing the auditor's report. The auditor made another report in accordance with the instructions of the court.

This report having been confirmed, the widow and administrator appealed to the Supreme Court, in several specifications assigning the confirmation for error.

*F. W. Hughes* (with whom was *G. E. Farquhar*), for appellants.—The court was bound by its own rules: Alexander *v.* Alexander, 5 Barr 279; Green *v.* Hallowell, 9 Id. 53; Ankrim *v.* Sturges, Id. 275. The Supreme Court will reverse for an obvious mistake in interpreting its rules by a lower court: Dailey *v.* Green, 3 Harris 118; Whitehall Township, 11 Wright 156.

*J. W. Ryon* (with whom was *J. Ellis*), for appellees.

The opinion of the court was delivered, February 7th 1870, by
SHARSWOOD, J.—These are appeals by the administrator and the widow of James Brennan (Rush), deceased, respectively, from the final decree of the Orphans' Court of Schuylkill county, confirming the report of an auditor appointed to restate and settle the account of the administrator, and to distribute the balance found to be in his hands. The principal assignment of error is,

[Brennan's Estate.]

that the court below confirmed the report in violation of their own written rules. It has been said, indeed, more than once, that courts are the best exponents of their own rules: Ellmaker *v.* Franklin Ins. Co., 5 Barr 189; Dailey *v.* Green, 3 Harris 118, 128; yet it would often work the greatest injustice if they were to be allowed plainly to disregard or violate them. · This court has often reversed for such cause. When the rights of parties depend upon the observance of court rules and orders, there is every reason why we should insist on it: Alexander *v.* Alexander, 5 Barr 277; Green *v.* Hallowell, 9 Id. 53; Ankrim *v.* Sturges, Id. 275; In re North Whitehall Township, 11 Wright 156. Without going beyond what is strictly the record in this case, it is clear that the 68th rule of the court below was entirely disregarded. It provides that, where any matter in the Orphans' Court is referred to an auditor, and the time for making his report is extended by a special order—"the auditor shall give notice to the parties who appeared before him, or their attorneys, at the time of making the report, a certificate of which shall be filed with the report." The auditor in the case was appointed July 1st 1867. Two orders were subsequently made continuing his appointment, and of course extending the time for filing the report on March 30th 1868, and June 11th 1868. Whether notice of the filing was given or not, the record shows no such certificate to have been filed with the report as the rule plainly requires. Had the appellants appeared and filed other exceptions only, it might have been considered as a waiver of compliance with the rule. But the widow did except in the court below on this very ground. The record does not show any special reference back to the auditor for a special purpose at June Term, even if that, as the court below appeared to think, would have varied the case. We must reverse the decree on account of this manifest error, and as the record is necessarily to be remitted for further proceedings, we think it proper to say that the widow should have an opportunity, either to produce testimony before the auditor, or to ask for issues upon the questions of the deductions from her distributive share made on account of the Cantner note received by her, and of the alleged abstraction by her of the pocket found by the auditor to have contained $10,500 of the estate of the decedent—questions which, as it appears to us, are peculiarly proper for the decision of a jury, should the widow desire it. We are of opinion that there was also error in the learned court below in disallowing the commissions claimed by the administrator. The ground upon which this was done was, that the accountant had been unfaithful to his trust in giving up to the widow a note of George Cantner for $500, claimed by her to belong to herself, but found by the auditor to be part of the assets of her husband. Instead of surcharging the administrator

[Brennan's Estate.]

with this amount, the auditor struck out the commissions amounting to $484.44, and the court was of opinion, on exception filed, that this was as favorable as the administrator had a right to expect, because the commissions were less in amount than the sum with which he ought to have been surcharged. But if he had been surcharged with this sum in his account, he would clearly be entitled to claim and receive it from the widow's distributive share, as money paid and advanced by him to her in part of such share. Nothing is more common than for administrators to make such advances to distributees, and to be credited with them in the distribution account. Admitting that the note did belong to the decedent, and not to his wife, it was but such a payment in advance. The auditor, in point of fact, has charged this sum against the widow, adding to it the $10,500 said to have been in the pocket, and thus making $11,000. The estate then has lost nothing. Why should this mistake, if mistake it was, be visited upon the administrator by the forfeiture of his commission? We perceive no good reason for it.

> Decree reversed, and record remitted for further proceedings; the costs of these appeals to be paid from the estate of the decedent.