# William Roddy's Appeal.

1. An assignee for the benefit of creditors, who had filed his account and had the same confirmed, made application to have the confirmation taken off and the account re-stated. His application being refused, he took an appeal to the Supreme Court, which appeal was non prossed and the record remitted. He then took a writ of certiorari to bring up the record, without having renewed his appeal and without giving security. *Held*, that the only office of a certiorari in such cases was to bring up the record after an appeal had been duly entered, and that as there was no appeal pending in the present case the writ of certiorari had been improvidently issued and would be quashed.

2. The action of the court below in refusing an application by an assignee for the benefit of creditors to have the confirmation of his ac-

count taken off and his account re-stated, is not reviewable by the Supreme Court where the application is in the nature of an application for a rehearing.

3. Where in such case the application is in the nature of a bill of review it must be founded either on error in law apparent on the record, without the aid of extrinsic evidence, or on matters dehors the record which have arisen or been newly discovered since the confirmation and could not by the exercise of reasonable diligence have been discovered before.

4. Facts found by an auditor or master and approved by the court below, will not be disturbed by the Supreme Court except for manifest error.

October 24th 1881.   Before Sharswood, C. J., Mercur, Gordon, Paxson, Sterrett and Green, JJ.   Trunkey, J., absent.

Certiorari to the Court of Common Pleas of *Somerset county :* Of October and November Term 1881, No. 21.

The material facts of this case, together with the matters assigned for error, are fully set forth in the opinion of the court.

*J. S. Ferguson* (with him *John R. Edie* and *John Roddy*), for the appellant.

*W. H. Koontz,* for the appellees.

Mr. Justice Sterrett delivered the opinion of the court, November 7th 1881.

The Act of June 14th 1836 provides that any person aggrieved by the definitive decree or judgment of the Court of Common Pleas, in any case relating to assignees for the benefit of creditors, may appeal to this court within one year after such decree or judgment : *Provided,* that in all cases the party appealing shall first give security in such sum as the Court of Common Pleas shall direct, conditioned to prosecute such appeal with effect, and shall also make oath or affirmation that such appeal is not intended for delay : Purdon, 1420, pl. 36.

The account of appellant, as assignee of Nehemiah Miller and wife, was filed in June 1878, and confirmed by the court. In November of the same year an auditor was appointed to distribute the balance in his hands, as shown by the account.   The schedule of distribution reported by him was confirmed in February 1879.   In August following, after creditors had applied to the court for attachment to compel payment of their distributive shares of the fund, the appellant presented *his* petition praying the court " to take off the confirmation of the auditor's

report and the confirmation of his account, so as to permit a re-statement of said account in accordance with the " facts presented in the petition. After notice to those interested the court appointed an auditor to take testimony, find the facts and report an opinion on the law. The facts found by the auditor were accordingly reported to the court, together with his opinion, "that the confirmation of the account . . . and the auditor's report thereon, should not be taken off." Exceptions filed thereto were overruled, and the report of the auditor was confirmed ; whereupon an appeal was taken by the assignee under the provisions of the act above referred to. The paper book furnishes no information as to what disposition was made of the appeal, but referring to the original record, brought up on the certiorari, we find that a judgment of non pros. was duly entered by this court on October 25th 1880, and a remittitur filed in the court below. Ordinarily this would be regarded as the end of that appeal, but the party complaining appears to have thought otherwise, and has again brought before us the same record without having renewed his appeal, and without having given security as required by the act. It is scarcely necessary to say that there is neither precedent nor authority for such a proceeding. Mere matters of form may sometimes be dispensed with, but an appeal from the definitive decree of an inferior court is a matter of substance, and must be taken in the manner and within the time prescribed by law. This has not been done. We have been asked to quash the appeal, but there is nothing upon which such a judgment can operate. The only office of a certiorari, in such cases as this, is to bring up the record after an appeal has been duly entered. Inasmuch as there was no appeal pending in this case the writ was improvidently issued, and should therefore be quashed.

But, in view of the fact that the case was argued at length on the merits, as though an appeal were pending, we have examined the record and find no error therein.

The petition to the court below is so drawn as to render it doubtful whether it was intended as a bill of review or merely an application for a rehearing. If the latter, the action of the court thereon is not reviewable here. It is only by treating the petition as a bill of review that the assignee could have any standing in this court. As a general rule a bill of review must be founded either on error in law apparent on the record, without the aid of extrinsic evidence, or on matters of fact dehors the record, which have arisen or been newly discovered since the decree, and could not, by the exercise of reasonable diligence, have been discovered before. It is not pretended there is any error apparent on the face of the assignee's account, or in

the report of the auditor distributing the fund.  The application is grounded solely on the allegation that "since the filing of his account, and the auditor's report thereon, such a new state of facts has arisen that should entitle " him to equitable relief. After stating that he had deposited the proceeds of his assignors' real estate in the banking house of I. O. Kimmel & Sons for safe keeping, and that he considered it a safe depository, etc., he says, "that since his account was made out and confirmed, I. O. Kimmel, individually, and I. O. Kimmel & Sons, have made an assignment for the benefit of their creditors, and that their estate will not pay their debts."  This is the only "new state of facts" of which any mention is made in the petition.  The extent of the bankers' insolvency is not stated, and no particulars in regard thereto are given.  Whether such newly discovered facts are sufficient to justify the granting of the relief asked for is more than doubtful; but, waiving the insufficiency of the petition, both as to form and substance, and recognizing the authority of a line of cases which limit the liability of trustees, we are of opinion that upon the facts found by the auditor, and conclusions drawn therefrom, all of which were approved by the court, the learned judge of the Common Pleas was clearly right in refusing to take off the confirmation either of the assignee's account or the auditor's report.

The subjects of complaint in the first five assignments are, the refusal of the court to sustain exceptions to the auditor's finding of facts and the inferences drawn by him therefrom. As to the former, the settled rule is that facts found by an auditor or master and approved by the court, will not be disturbed except for manifest error.  There was no such error in this case. On the contrary, the auditor was fully warranted not only in finding the facts as he did, but his inferences therefrom are substantially correct.

The fund deposited was the proceeds of the assignors' real estate, sold by order of court, divested of liens.  One of the creditors, whose liens were thus divested, was George J. Black, who held judgments for purchase money, first liens on the property, amounting, as the assignee himself says, " to about two-thirds of the whole fund."  There was no possible excuse for the non-payment of that amount.  The law relating to sales by assignees divested of liens, expressly directs the application of the proceeds to payment of liens extinguished by virtue of such sale, and the assignee is required to give bond conditioned for the faithful appropriation of the money: Purdon 1973, pl. 1.  The right of Mr. Black, as the first lien creditor, to two-thirds of the fund was conceded, and it was the clear duty of the assignee to pay as soon as he received the purchase money.  If he had done so the amount remaining would have been comparatively

small.   There was no necessity  for  depositing  money in bank, which should have been forthwith paid to those whose liens were divested  by the  sale,  and  permitting it  to  remain  there  for months.   The excuse given  by the assignee for  not paying out the money  to recognized lien  creditors was, that his attorney advised  him  that  he  could  not  safely  pay  until  the fund was distributed by an auditor.  In this he is not borne out by the testimony of his attorney, Mr. Kimmel.  He testified that he told the assignee it was better not to pay out any money until an auditor was appointed to make distribution, "except where he knew  it  would be safe to  pay,  where  he knew  it would be allowed."   They both  knew that nearly  the whole fund could have been safely paid.  Some time after the money was deposited they did  pay  Mr. Black $1,000 on account of his extinguished liens, and it would have been equally safe to have paid the whole of it at an earlier date.

For these and  other  reasons given  by the auditor, and concurred in by the court below, we think the relief prayed for was rightly refused.

But, for  the  reason heretofore given, we can do nothing more than quash the writ on which the record was brought before us.

Writ of certiorari quashed.