## McCready, Appellant, *v.* Gans.

*Practice, C. P.—Statement of claim—Demurrer—Judgment—Opening judgment—Amendment—Rehearing—Appeal.*

1. Where a demurrer to a statement of claim has been sustained and judgment has been entered for the defendant no amendment can be allowed until the judgment has been opened or vacated.

2. An application to open or vacate a judgment entered adversely after a hearing or trial must be made before the end of the term at which the judgment is entered.

3. The refusal of an application for a rehearing after judgment

has been entered on demurrer in favor of the defendant is not reviewable on appeal.

*Statements of claim—Defective statements—Copy of instrument sued upon—Variance—Demurrer.*

4. A statement of claim alleged that the plaintiffs had executed with the defendants a contract to underwrite an issue of bonds of a railway company and that a copy of such contract was attached to the statement. It appeared from such copy that the contract should not be binding on any signer until bonds in the sum of $565,000 had been subscribed for and that the defendants had signed as subscribers; but the copy did not show any signatures except those of the defendants, who had not subscribed for the whole issue. It further appeared that the copy of the contract attached to the statement was incomplete. The statement did not show performance or such action by the plaintiffs under the contract as would sustain the right of action. The court sustained defendants' demurrer to the statement and entered judgment for the defendants, and subsequently dismissed plaintiffs' petition for a rehearing and the right to amend the statement. *Held,* no error.

Argued April 13, 1913. Appeal, No. 389, Jan. T., 1913, by plantiffs, from order of C. P. Fayette Co., Sept. T., 1911, No. 377, sustaining demurrer to plaintiffs' statement of claim and refusing to permit plaintiffs to amend statement of claim in case of James A. McCready, Vincent Stevens and Joseph E. Barnes, acting as Syndicate Managers, now for the use of Charles Fahr and George D. Trawin, Trustees for themselves and for Frank R. Shryock, John J. Shryock, Cyrus See, and Roland B. Thompson and Maria Thompson, executors of the last will and testament of Henry H. Thompson, deceased, v. William L. Gans and Henry B. Gans. Before FELL, C. J., BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Assumpsit on a contract to subscribe to an issue of bonds. Before UMBEL, P. J.

From the record it appeared that the action was brought on a contract of underwriting between three men called syndicate managers and the defendants, who

by executing the contract became members of a syndicate to underwrite an issue of bonds of the Meadville and Conneaut Lake Traction Company. The statement of claim averred that the syndicate managers had notified the defendants of the acceptance of their contract, and, after the expiration of the time fixed by the contract had assessed the expenses upon all of the members of the syndicate, which expenses equalled the full amount underwritten, by reason of the failure to sell any of the bonds. To this statement a demurrer was filed on the ground that no complete copy of the underwriting agreement was attached to or contained in plaintiffs' statement; that the underwriting agreement provided it should not be binding on any signer until total subscriptions aggregated in obligation the sum of $565,-000; that while it was alleged in the statement that the amount had been signed, the copy attached showed no signatures except those of defendants who did not subscribe the entire sum; and that the statement failed to show performance or such action by the syndicate managers under the authority contained in the contract as would sustain a right of action.

The court sustained the demurrer in an opinion in part as follows:

The first and second exceptions are based on the fact that the copy of the underwriting agreement attached to the declaration does not show that it was signed by the syndicate managers, or by any subscribers other than the defendants, insisting that under the terms of the said agreement it was not binding nor was it such contract as would support an action nor, in fact, was it a contract at all until it was signed on the one side by the syndicate managers and on the other by sufficient subscribers to make the total of their subscriptions at least $565,000.

Section 3 of the Act of May 25, 1887, P. L. 271, provides "The plaintiff's declaration......shall consist of a concise statement of the plaintiff's demand......

which......shall be accompanied by copies of all notes, contracts, book entries......if any, upon which the plaintiff's claim is founded."

In interpreting this provision, our Supreme Court has held that the plaintiff's statement must exhibit a complete cause of action in clear, express and unequivocal language: Byrne v. Hayden, 124 Pa. 170; Mink v. Shaffer, 124 Pa. 280; Gere v. Unger, 125 Pa. 644; Fritz v. Hathaway, 135 Pa. 274; Laubach v. Meyers, 147 Pa. 447; Ferguson v. Telegraph Co., 151 Pa. 211; Acme Mfg. Co. v. Reed, 181 Pa. 382.

The copy attached must set forth the whole of the instrument: Campbell v. P. & W. Ry. Co., 137 Pa. 574; Finch v. White, 190 Pa. 86; Schofield v. Lafferty, 17 Pa. Superior Ct. 8.

It is not competent for plaintiff to select parts of a written contract, and to claim that his action is founded on these alone, when the contract plainly contains other terms not produced by the plaintiff. If the whole contract, including the parts not copied, would support the action, plaintiffs' case is entitled to stand, but if it would show a defense, the defendant has a right to have that appear before he is called upon to plead: Acme Mfg. Co. v. Reed, 181 Pa. 382.

Unquestionably in this case, all of the signatures of all of the syndicate managers and all of the subscribers, with the amount subscribed by each, are and form a material part of the contract and, in our opinion in legal effect, the failure to file a copy with all the said signatures or names of the subscribers is the same as if the plaintiff had left out the following provision of the contract, viz: "This Underwriting Agreement shall not be obligatory upon any of the subscribers until the subscribers hereto and the allotments made hereunder by the Syndicate Managers shall amount in the aggregate to Five Hundred and Sixty-five thousand ($565,000) Dollars." Nor, in so far as the copy of the contract required to be filed with the declaration is concerned, do

we think the amendment to the declaration filed May 28, 1912, cures the defect. The part of the contract referred to last above if not complied with would show a defense and would clearly bring the case within the Acme Manufacturing Co. v. Reed, supra; we are, therefore, of opinion and hold that the copy of the underwriting agreement filed with the declaration should contain a list of all the signers to the agreement, not necessarily copies of all the agreements or counterparts signed, but one copy of all similar agreements with the names of the signers to all.

As to the sixth exception, the averment of the declaration to the effect that the syndicate managers as well as the use plaintiffs had endeavored in good faith to sell and dispose of the stock and bonds for which the defendants and other subscribers had subscribed and had failed to sell any of the said stock and bonds, we think shows performance in that regard; but when they failed to make such sale they had, under the eighth paragraph of the underwriting agreement, other duties to perform of a nature and character equally as important in ascertaining and determining the sum required to discharge all the obligations of the syndicate and an apportionment of the same ratably upon the subscribers, and nowhere in the declaration do we find any claim or averment of the syndicate managers of action or performance of their duty in that particular. We do not think the statement above to the effect that when the syndicate managers and use plaintiffs failed to sell sufficient bonds to pay the syndicate obligations and the defendants were notified that they were liable for the full amount of their underwriting agreement is compliance or performance in that regard. This we consider material to the extent of warranting the sustaining of this exception.

In our opinion the additional exception filed June 18, 1912, averring no allotment of bonds to the defendants is most important and vital to plaintiffs' claim. So far as this subscription is concerned we do not think it is

straining the facts to hold that Wm. L. Gans and H. B. Gans are one party; in the above resolution of the syndicate managers allotting the bonds, the name of H. B. Gans does not appear. The resolution states that more than $565,000 were subscribed and some were rejected, the names of none who were rejected are given, the inference is convincing that it must have been the intention to reject H. B. Gans.

The first paragraph of the declaration sets forth: "Heretofore, to wit, on or about the 30th day of April, A. D. 1906, the said James A. McCready, Vincent Stevens and Joseph E. Barnes, acting as syndicate managers, entered into an agreement in writing with the said defendants, William L. Gans and Henry B. Gans, a copy of which agreement is hereto attached, marked exhibit 'A' and made a part hereof; as appears by said agreement, said defendants agreed to purchase from the said syndicate managers first mortgage bonds of the Meadville and Conneaut Lake Traction Co., a Pennsylvania corporation, to the amount of $25,000, and pay for them at the rate of 90 per cent. of their face value; and the said syndicate managers agreed to deliver the said bonds to the said defendants upon the payment of the said sum of money," etc., showing conclusively and beyond question that the transaction so far as the defendants are concerned was a joint one and that their liability, if any, was joint and it was so regarded by the syndicate managers, as well as by the use plaintiffs, which conclusion is strengthened and confirmed by the manner of their signing the underwriting agreement and all the exhibits attached to the declaration bearing on the matter.

The following provision of the underwriting agreement, viz: "The syndicate managers shall have the right to reject or to scale down any or all subscriptions and each subscriber agrees to take such participation, not in excess of the amount set opposite his name as shall be allotted to him by the syndicate managers," certainly

could not by any possible construction be held to authorize the syndicate managers in such joint subscription to reject or eliminate one of the joint subscribers and allot the whole of their joint subscription to the other joint subscriber—thus releasing one and doubling the liability of the other. A fortiori, if the syndicate managers attempt to make such an allotment and resolve accordingly and eliminate one of the joint subscribers, under their authority to reject as provided in the underwriting agreement, certainly thereafter they could not maintain an action against them jointly for the amount of their original joint subscription.

So far as appears, the defendants have not waived any rights or advantages to which they may be entitled by reason of such action by the syndicate managers. The statement in the amendment to declaration that "In pursuance of such action" (allotment by syndicate managers) "a written statement was sent to all of the subscribers, including the defendants in this case, on the 4th day of October, 1906," does not help plaintiffs' case, as the only action we find by the defendants thereafter is signing a paper in January, 1909, directed to Charles Fahr, trustee, agreeing to the deposit of the bonds, etc., subject to the bondholders' agreement and this was done with the distinct understanding that it should not affect defendants' legal standing with reference to the underwriting agreement.

Nor can we conclude that the statements in the agreement to the effect that so far as the subscribers are concerned it is entered into severally, nor that each subscriber shall be responsible to the full extent of his undertaking regardless of the performance or nonperformance of any other subscriber, in any way helps the plaintiffs for, as we view the matter and as it has been considered by the syndicate managers and the use plaintiffs, W. L. Gans and E. B. Gans are only one subscriber.

Subsequently the plaintiff filed a petition for a rehearing and an amendment to the statement of claim.

Thereafter the court dismissed the petition for a rehearing and refused to allow the amendment on the ground that said amendment stated a new cause of action.  Plaintiffs appealed.

*Errors assigned* were in sustaining the demurrer and in refusing to allow the amendment to plaintiffs' statement of claim.

*Gifford K. Wright,* with him *William E. Crow,* and *McKee, Mitchell & Alter,* for appellants.

*H. L. Robinson,* of *Robinson & McKean,* with him *D. M. Hertzog,* for appellees.

PER CURIAM, November 7, 1913:

The order of the court below sustaining the demurrer, entered July 16, 1912, was a final judgment in favor of the defendants, and must be tested by the record as it stood at that time.  Until that judgment was opened or vacated, no amendment of the statement of claim could be allowed: Stephens v. Myers, 12 Pa. 302; Wood v. Anderson, 25 Pa. 407; Green v. Worth Bros., 223 Pa. 604.  In the case of a judgment entered adversely after a hearing or trial it is settled that the application to open, or vacate or for a rehearing must be made before the end of the term at which the judgment was entered: King v. Brooks, 72 Pa. 363.  In the present case the application was for a rehearing after judgment had been entered on the demurrer, and not to open or vacate that judgment.  The refusal of an application in the nature of a request for a rehearing in the court below is not reviewable on appeal: Keim's App., 27 Pa. 42; Kepner's App., 94 Pa. 74; Roddy's App., 99 Pa. 9.  For these reasons the second assignment of error must be dismissed.  This leaves nothing for our consideration except the question whether the court erred in sustaining the demurrer to the statement as it stood July 16,

1912, all subsequent proceedings being disregarded. We are not convinced that the court erred in sustaining the demurrer to the original statement. It was defective in the manner and for the reasons pointed out by the court below and for other reasons urged by counsel for appellees in the argument of the case here. Upon the record as it stands the contentions of the appellants cannot be sustained.

Appeal dismissed without prejudice. Costs to be paid by appellants.