# Fisher v. Fisher, Appellant.

*Divorce—Rules of court—Argument—Mandatory requirement.*

A rule of court that in divorce proceedings, after testimony has been taken, the case shall be placed upon the argument list, is mandatory. The rule affects the respondent's rights and, until abrogated, is in force and cannot be disregarded by the court.

*Decree—Motion to vacate—Term.*

A motion to vacate a decree of divorce having been made within the term at which the decree was entered may be heard and decided at a subsequent term. It is the application to vacate the decree or judgment, which must be made before the end of the term at which the decree was entered, and the granting of the rule suspends the operation of the decree until the motion is disposed of.

A term of court includes all adjournments thereof until the commencement of the next term.

*Divorce—Duty of lower court to write opinion.*

It is the duty of the court below, in reviewing a proceeding for divorce, either to find the facts itself on which it bases its decree, or to adopt the findings of fact of the master.

*Divorce—Adultery—Tempting respondent—Corrupt evidence— Act of March 8, 1815, section 7, Sm. L. 288.*

A husband who suspects his wife of adultery may take means to procure proof, but he must not lead her into a fresh wrong because he feels that she is guilty of an old one. He may leave open the opportunities which he finds, but he must not lay new temptation in her way; it is one thing to permit, and another to invite; and when he takes advantage of an agent's unauthorized fraud he is answerable for the fraud. When a husband intentionally lays a lure for his wife, either acting in person or through an agent, his will necessarily concurs in her act.

Argued April 19, 1920. Appeal, No. 21, April T., 1920, by respondent, from decree of C. P. Cambria County, March T., 1913, No. 135, granting a divorce in the case of Peter S. Fisher v. Lorena E. Fisher. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Libel in divorce.  Before STEPHENS, P. J., and O'CON-
NOR, J.

The facts are stated in the opinion of the Superior
Court.

The case was referred to Arthur C. Simler, Esq., who
recommended a divorce.

On exceptions to the master's report and other orders
and decrees, as referred to in the opinion of the Superior
Court, the court dismissed the exceptions and entered a
decree granting a divorce.

*Error assigned,* among others, was the final decree of
the court.

*James A. Graham,* of *Graham & Yost,* for appellant.

*Percy Allen Rose,* of *Forrest & Percy Allen Rose,* for
appellee.

OPINION BY KELLER, J., July 14, 1920:

This record is long and very complicated.  We shall
refer to only so much of it as is necessary to understand
the questions involved in this appeal.

The libellant sued for a divorce a vinculo matrimonii
on the ground of adultery.  The respondent filed an an-
swer denying the averments of the libel, and asked for a
jury trial, which was refused by the court, and a master
was appointed to take testimony and suggest a decree.
Testimony was taken before the master on behalf of both
parties, between December 2, 1914, and April 5, 1915.
Over two years afterwards, on June 8, 1917, he filed his
report in which he found that the respondent had com-
mitted adultery with one T. J. Wilson, in the Victoria
Hotel, New York City, on October 31, 1912, and recom-
mended that a divorce be granted as prayed for.  On the
same day, without any hearing or argument, and with-
out itself finding any facts or filing any opinion approv-
ing the findings of the master, the court entered a formal

decree divorcing the libellant from the bonds of matrimony which he had contracted with the respondent. On August 7, 1917, the respondent presented a petition praying that the decree of divorce so entered be vacated and set aside on the grounds, inter alia, that (1) no notice of the filing of the master's report was given her and she had no knowledge thereof until July 5, 1917, since when the court had held no session; (2) the court neither found any facts upon which to base its decree nor approved the findings of fact of the master; (3) there was no compliance with Rule 73 of the Court of Common Pleas of Cambria County, requiring the case to be placed on the argument list to be heard before final decree, thereby depriving respondent of the opportunity to file exceptions to the report and be heard before the decree was entered against her; (4) lack of competent evidence to support the findings of fact of the master. A rule to show cause was granted the same day, and on August 31, 1917, the libellant filed his answer maintaining the legality of the decree. On January 7, 1918, the court made the following order upon this rule: "Rule granted as within prayed for." On April 16, 1918, the respondent presented a petition calling attention to the error in the order of January 7, 1918, and praying that it be amended, and on the same day the order was amended as follows: "And now April 2, 1918 [April 16, 1918], the above petition presented in open court and upon due consideration thereof it is directed that the form of decree entered as within set forth be considered inadvertently entered. And that a decree be entered as of January 7, 1918, in the following form: "Rule absolute." On the same day petitions were presented by the respondent praying for the allowance of counsel fees in the action and for an order directing the libellant to comply with a previous order of the court made on August 5, 1912 (in an action for divorce a mensa et thoro brought by this respondent), for the payment of alimony pendente lite; and the court made an order directing

compliance with said order for the period June 1, 1917, to April 1, 1918, and thereafter until the further order of the court. On June 3, 1918, the respondent filed a petition asking for an order on the libellant to pay certain medical and hospital bills and for an attachment on the libellant for his failure to obey the order of April 16, 1918, and pay alimony as therein directed. Rules were granted to which answers were filed by the libellant. On April 8, 1919, exceptions were filed by the respondent to the master's report. On April 22, 1919, the libellant moved to strike the master's report from the argument list, and on the same day the pending rules were argued. On May 6, 1919, the following order was entered: "And now, May 6, 1919, all orders, rules and decrees entered by this court or any judge thereof in the above stated proceeding since June 8, 1917, are annulled, discharged and set aside and the application for a writ of attachment for the body of the libellant is denied and all other applications made for or on behalf of the respondent are refused and denied and the decree of 'absolute divorce' entered as the judgment of this court on the eighth day of June, A. D. 1917, is directed to be and remain as the final decree of this court in this cause." The respondent appealed.

We will group the assignments of error, or such as we deem it necessary to pass upon, and consider them in the following order:

1. Rule 73 of the Rules of the Court of Common Pleas of Cambria County, relating to divorces, provides as follows: "When defense has been made and no issue awarded, and the testimony has been closed and taken or returned on both sides, or when the proceeding is ex parte, and the testimony has been taken and filed, or an application for an allowance pendente lite and counsel fee has been made, the case shall be placed on the argument list to be heard and disposed of." This language is entirely clear. Its requirements are mandatory. There is no pretense that its provisions were complied

with in this case. Nor is it any excuse for such non-compliance that the court had frequently disregarded the rule in the past. The rule affected the respondent's rights and, until abrogated, was in force and could not be disregarded by the court: Brennan's Est., 65 Pa. 16; Todd v. Insurance Co., 9 Pa. Superior Ct. 371. The rule is a reasonable one, and this was an especially fitting case for its application. The cause had been hotly contested. Over two years had passed after the testimony was closed before the master's report was filed. The respondent was entitled to file exceptions to the findings of fact of the master and to the opportunity afforded by the rule to be heard on the findings and decree submitted by him before final decree was entered. The court having failed to comply with its own rule, the decree of June 8, 1917, was improvidently entered and might properly be vacated and set aside. The decree was open to the further objection, sufficient to justify its vacation, that the court neither found any facts itself on which to base the decree nor adopted the findings of fact of the master: Middleton v. Middleton, 187 Pa. 612; Baker v. Baker, 195 Pa. 407, p. 410; Howe v. Howe, 16 Pa. Superior Ct. 193; Hirch v. Hirch, 70 Pa. Superior Ct. 583.

2. The court below, in its opinion of May 6, 1919, held that the order of April 16, 1918 [erroneously dated April 2, 1918], vacating and setting aside the decree entered June 8, 1917, was a nullity, that the court was without jurisdiction, and the president judge of the court without authority, to make it, because the petition was filed August 7, 1917, and, (it was averred), the term had ended June 8, 1917, (the same day the decree was entered), and the court therefore had no power to vacate or set aside the decree after the term to which it was entered. The learned court was wrong in its application of this rule of practice.

Under the Act of May 1, 1852, P. L. 506 (sec. 11), it is provided that the courts of Cambria County shall commence on the first Monday of March, June, September

and December, and shall continue two weeks at each term if necessary. By order of court, authorized by Act of March 18, 1875, P. L. 28, the first week of the June term is devoted to the trial of civil cases and the second week to the trial of criminal cases. The court having finished its civil cases on June 8, 1917, adjourned for that week, and on June 11, 1917, proceeded to the trial of criminal cases, and when they were completed adjourned to meet on certain days, fixed by general rule or otherwise, for motions and the transaction of current business, and on one of these, August 7, 1917, the petition to vacate and set aside the decree of June 8, 1917, was presented and a rule granted thereon. The September term did not begin until the first Monday of September. Any business transacted at a session of court after the first Monday of June and before the first Monday of September was in the June term.

A day to which a court is adjourned is part of the same term at which the adjournment was made: Leib v. Com., 9 Watts 200. "The whole term is considered as but one day; so that the judges may at any time during the term revise their judgments. In the computation of the term, all adjournments are to be included": 3 Bouvier's Dictionary (Rawle's 3d Revision) 3259. A person who has been convicted at a regular term of the criminal court may be sentenced at an adjourned court, and such sentence may be reconsidered, altered [unless complied with: Ex parte Lange, 18 Wallace 163], or revoked, at any adjourned session before the beginning of the next regular term, such adjournments being treated as part of the regular term: Com. v. Murphy, 45 Pa. Superior Ct. 185. "The time of commencement of every term is fixed by statute and the end of it by the final adjournment of the court for that term": Bronson v. Schulten, 104 U. S. 410, p. 415, and during that term, —that is, the whole of it, including every session of the court until the commencement of the next term—all judgments, decrees and orders of the court, however con-

clusive in their character are under the control of the
court which pronounces them and may be set aside, va-
cated, modified or annulled by that court: Ibid, p. 415.
Such business as was transacted by the Court of Com-
mon Pleas of Cambria County between June 4, 1917, and
September 3, 1917, was transacted in the June term of
that year by adjournment from time to time until the
final adjournment before the first Monday in September.
There is no interval or interregnum during which the
business of the court is transacted without being refer-
able to some term. The Act of April 14, 1834, P. L.
333, sec. 36, specially provides that "The courts of com-
mon pleas of the several counties shall have power re-
spectively to adjourn the sessions of the court from time
to time as they may think proper and at such adjourned
courts to act upon and decide all matters depending
therein, with the same effect as they might or could do at
the terms appointed for the holding of such court as
aforesaid." The court having regularly adjourned, and
convened on August 7, 1917, when the petition to set
aside the decree of June 8, 1917, was presented and the
rule granted thereon, the action of the court in that re-
spect was within the term and was entirely regular and
valid.

The motion to vacate and set aside the decree of
June 8, 1917, having been made within the term, it could
be heard and decided at a subsequent term: Lance v.
Bonnell, 105 Pa. 46. It is the application to vacate the
decree or judgment which must be made before the end
of the term at which the decree was entered: McCready
v. Gans, 242 Pa. 364. The granting of the rule sus-
pended the operation of the decree until the motion was
disposed of: Brockett v. Brockett, 2 Howard (U. S.)
238; Goddard v. Ordway, 101 U. S. 745; Memphis v.
Brown, 94 U. S. 715. "The court could lose jurisdiction
over it only by the adjournment of the term with no
motion pending respecting it": Barrell v. Tilton, 119
U. S. 637, p. 643. Whether, therefore, it be considered

that the rule to vacate the decree of June 8, 1917, was made absolute on April 16, 1918, or relates back to January 7, 1918, as provided in the order, and in accordance with the evident intent of the order of that date, the pendency of the rule had the effect of suspending the decree for the purpose of such action, until the date when the rule was made absolute and the decree vacated and set aside. The order or decree of May 6, 1919, directing the order of April 16, 1918, to be annulled, revoked and set aside, was thus based on erroneous grounds and must be set aside. It was also entered in violation of the very rule invoked by the court below since it was made after at least three full terms had elapsed.

The authorities cited by the counsel for the appellee (Clarion M. & P. R. Co. v. Hamilton, 127 Pa. 1; Mayer v. Brimmer, 15 Pa. Superior Ct. 451, etc.), are not in point, as in those cases the motion to vacate or set aside the judgment was not made until after the time for an appeal had expired and the judgment had become final and conclusive, and the filing of the motion did not affect the conclusiveness of the judgment nor operate to suspend its effect. The motion under such circumstances was nothing more than an attempt to secure a review of the judgment after the right to appeal had been lost.

3. It follows that the order of April 16, 1918, directing the libellant to pay alimony in accordance with the previous order of the court of August 5, 1912, in the divorce action brought by the appellant, was improperly revoked by the order or decree of May 6, 1919. The court, in that proceeding, found that the property interests of the libellant were approximately of the value of $275,000, and his approximate annual income from the same, $13,430. We do not think the order for the payment of $2,500 per annum to his wife was unreasonable under the circumstances: Lynn v. Lynn, 68 Pa. Superior Ct. 324.

4. Counsel for the respondent are entitled to be paid reasonable counsel fees for their services in this action.

The record embraces many matters not referred to in this opinion, and we are of opinion that $500 is a fair and reasonable sum to be paid on that account by the libellant: Lynn v. Lynn, supra.

5. We have carefully read the testimony in the case taken before the master and cannot agree that it warrants a decree in favor of the libellant. The decree is based on the respondent's alleged misconduct with one T. J. Wilson. This man's real name, it appears conclusively from the evidence, was Leo Devine. He was an employee of the detective agency hired by the libellant to secure evidence of his wife's adultery. Devine, as well as the three men who testified to the respondent's alleged adultery, were all acting for the same detective firm and were ultimately paid by the libellant. The evidence convinces us that Devine was employed not so much to obtain evidence of the respondent's adultery, as to bring it about. This court has already put the seal of its condemnation on such practices in language which we cannot improve on. "Text writers and our courts agree, that a man who suspects his wife may take means to procure proof, but he must not lead her into a fresh wrong because he feels she is guilty of an old one. He may leave open the opportunities which he finds, but he must not lay new temptation in her way; it is one thing to permit, and another to invite; and one who takes advantage of an agent's unauthorized fraud is answerable for the fraud; when a husband intentionally lays a lure for his wife, either acting in person or through an agent, his will necessarily concurs in her act. A man who is so far forgetful of his own duties, moral and religious, and of all feelings of honor, as to connive at his own disgrace by being a party to her adultery, does not come to a court of justice with clean hands, when he seeks a separation from her on account of the conduct which he has deliberately arranged should occur": Clawell v. Clawell, 63 Pa. Superior Ct. 88. To the same effect, see Schwindt v. Schwindt, 66 Pa. Superior Ct. 217; Heidrich v. Heid-

rich, 22 Pa. Superior Ct. 72. The Act of March 8, 1815, sec. 7, 6 Sm. L. 288, provides that it shall be a good defense and perpetual bar against a suit for divorce on the ground of adultery if the "plaintiff......exposed his wife to lewd company, whereby she became ensnared to the crime aforesaid." The same rule obtains in other jurisdictions: Rademacher v. Rademacher, 74 N. J. Eq. 570, 70 Atl. 687; Dennis v. Dennis, 68 Conn. 186, 36 Atl. 34; McAllister v. McAllister, 137 N. Y. Supp. 833; Gower v. Gower, L. R. (1869-72), 2 Prob. & Div. 428; and it matters not that the husband himself may have given no orders for such conduct on the part of his detective; he cannot obtain redress from the courts for an act of adultery brought about by his own agent: Rademacher v. Rademacher, supra, and foregoing cases. No good purpose would be subserved by giving in detail the evidence which compels the conclusion that Wilson, or Devine, the alleged paramour, was a detective in the ultimate employ of the libellant at the time the alleged misconduct took place and that the apparent raid on the hotel was a plot or "plant" arranged by him and his fellow detectives. It is sufficient to say that such finding is supported by the testimony of Devine's wife, of Muncey, the head of the detective agency, by the admissions of the libellant himself, by the circumstances in connection with the New York incident, the unexplained possession by the libellant of the letters alleged to have been written by the respondent to Wilson, or Devine, and many other circumstances in connection with the whole affair, which are explainable on no other basis.

The fifth, sixth, seventh, eighth, tenth, eleventh, twelfth, fourteenth, fifteenth, sixteenth and eighteenth assignments of error are sustained. It is not necessary for us to pass upon the remaining assignments.

The decree of the court below is reversed and the libel is dismissed at the costs of the appellee. It is further ordered that the appellee pay to the appellant alimony at the rate of $2,500 per annum from June 1, 1917, to the

date of this judgment; and that the appellee pay Graham and Yost, attorneys for the appellant, the sum of $500 counsel fees in this action. The dismissal of this libel is not to affect any order for alimony in the pending suit brought by this respondent against the libellant.