## Tumeleavich v. Motley Coal Co.

*Pearson M. Judd,* for plaintiff.

*Joseph T. McDonald,* for defendant.

HOBAN, P. J., May 7, 1948.—The action is assumpsit. Plaintiff sues for total disability benefits as a victim of anthraco silicosis. He claims that contrary to the provisions of the agreement between United Mine Workers of America and the Anthracite Coal Operators of June 7, 1946, which by its terms became effective as of May 31, 1946, he became deprived of his opportunity to claim such total disability benefits from his last employer, defendant herein, according to the procedure set up under the Workmen's Compensation Law and the Pennsylvania Occupational Disease Act. Plaintiff's theory is that defendant, signatory to the Anthracite Mine Agreement of 1946, failed to file with the Workmen's Compensation Board its acceptance of the provisions of The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §1201 et seq., until after the date of plaintiff's total disability, which occurred on July 26, 1946. Because of defendant's failure to change its status from that of rejector of the act (long prior to May 31, 1946) to that of acceptor (effective with the board October 1, 1946) Referee Phillips concluded that the board had no jurisdiction and dismissed a claim petition for this same disability.

The original complaint was filed July 2, 1947. Defendant filed preliminary objections in the nature of a demurrer. The objections were sustained and the complaint dismissed October 31, 1947. On April 12, 1948, plaintiff asked for and received a rule to show cause why an amended complaint should not be filed. This was followed by a motion to dismiss the rule on

the ground that the court had no jurisdiction to consider it.

The rule must be discharged. The action of the court of October 31, 1947, was a definitive judgment. There was no motion to reargue the matter, nor was any effort made to open the judgment during term time. Admittedly, the proposed amended complaint was merely an elaboration of the original complaint, does not note new facts, and as a procedural matter we can find no warrant for entertaining it at this date. For the principles involved see McCready v. Gans, 242 Pa. 364.

Even if some reason were shown to treat the matter as a motion to open the judgment, or to reargue the merits of the original demurrer, the amended complaint would be subject to the same objection, to wit, that it is an attempt to secure the benefits of the elective compensation provisions of the Occupational Disease Act, without following the procedure necessary for securing the basic determination of facts as prescribed in the act. We suggested to plaintiff in our opinion of October 31, 1947, that his remedy would be by asking the Workmen's Compensation Board to entertain an appeal from the original ruling of the referee, which had dismissed the claim for want of jurisdiction. The argument at bar developed the fact that following the suggestion in our prior opinion such appeal had been perfected, but that the Workmen's Compensation Board finds itself faced with an adverse ruling on the question made in the case of Kalish v. Lehigh Navigation Coal, Inc., to no. 158, January term, 1948, in the Court of Common Pleas of Schuylkill County. In that case the court considered the question of jurisdiction on jurisdictional facts similar to the case now before us. Claimant there became disabled after the date of the Anthracite Mine Agreement of 1946, but before the operator had changed his status from that of a rejector of the act to an acceptor.

The court held that because the formal acceptance of the operator had not been filed with the Workmen's Compensation Board, there was no jurisdiction to bring a claim before the compensation board. In an opinion by President Judge Palmer the following language was used:

"As we have stated, there is no provision in the Act whereby an employer rejecting its provisions can thereafter accept it by entering into an agreement with his employes or by any other means waive the requirements of notice as provided for in Section 304 [of The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §1404].

"The contention that a contract entered into by private parties can automatically and arbitrarily set aside a statutory provision is without precedent and, obviously contrary to public policy."

I cannot accept the implication that it is ipso facto contrary to public policy to waive statutory provisions regulating all matters of conduct between private individuals or groups of such individuals in association. One thinks, for example, of the common provisions in leases, documents containing judgments by confession and other agreements by which one or the other party waives the benefit of exemption laws and laws granting stays in execution process. Where a declared public policy for reasons of public order or for the common good declares a contract of a certain nature between individuals to be prohibited, a contract attempting to waive the provisions of a statute announcing such policy obviously could not be enforced. So it is generally held that gambling contracts, contracts to take part in a criminal enterprise and others of similar type are against public policy. In the Occupational Disease Act itself (section 204) contracts made prior to the date of disability or death and in derogation of the workman's right to claim compensation, or to forestall such claims, are specifically forbidden, for

to permit such contracts would tend to defeat the broad social purpose of the act and by so doing to harm rather than promote the general welfare. But where the State declares a method of procedure primarily designed to protect the interests of private individuals in association with each other and to facilitate the determination of difficulties which arise in that association, I can see nothing inherently contrary to public policy in a contract which obviously is designed to accelerate the accomplishment of the same objective.

It seems to me that to hold otherwise would be to ignore the realities of the situation in a great industry. The provisions of the Anthracite Mine Contract of 1946 here in question were evidently designed to remove a cause of industrial strife and to bring to the workmen the benefits of a broad social policy already established as the policy of the State. A signatory to the contract might by mere omission defeat its purpose and thus deprive workmen of the rights which they had confidently expected were determined by the contract, and so enkindle rather than remove the causes of industrial dispute and partially defeat by such omission the approved public policy.

The theory of the Occupational Disease Act, in common with the Workmen's Compensation Act, is that industry in general should bear a share of the cost of disabilities to workmen arising from occupational hazard, so the State to encourage industry to assume this burden offers to all the members of industry upon certain conditions, and *only upon the agreement of employer and employe to accept the conditions,* a system of fact-finding, adjudication and insurance to permit the orderly processing of claims and to enable industry the more readily to carry the burden. If either party decided not to agree to operate under this system, they are free to litigate claims as at common law, certain common-law defenses, however, having been eliminated by statute. Now, if the parties agree

to accept the benefits of the system provided by the State, even though the formalities of calling into action the processes for fact-finding and adjudication have not been completed, it would seem to indicate a compliance with the declared public policy of the State and encourage acceptance of elective compensation rather than to be contrary to such policy. What such an agreement could not do is to call into operation the services of the State until formal compliance with the statutory rules for registration of the intention of the parties has been completed. But when such registration has been completed, there appears to be no reasonable objection to furnishing the State's services of adjudication for claims given validity by the initial agreement of the parties.

As to whether the Anthracite Mine Contract of 1946 actually makes the claim under consideration a valid one, we express no opinion. The question has not been argued in full and we believe it may be considered only on appeal from a decision of the Workmen's Compensation Board. Our difficulty here is the same one we faced in considering the preliminary objections. If this plaintiff is to claim the benefits of elective compensation, the basic facts must be determined by the Workmen's Compensation Board. If on appeal from a refusal of the Workmen's Compensation Board to consider the facts because of the jurisdictional question involved, and the court thought otherwise, the matter would have to be returned to the board for determination of the facts.

The question is an important one and it is hoped that it will be litigated through to appeal to our higher courts, but we are of the opinion that this court has no jurisdiction in an action of assumpsit to entertain the question.

Now, May 7, 1948, the rule to show cause why the plaintiff's complaint should not be amended as prayed for is discharged.